JOURNAL ENTRY and OPINION
{¶ 1} This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.
 {¶ 2} Plaintiff-appellant, Erma Mathis ("Mathis") appeals the trial court's granting defendant-appellee, American Commerce Insurance Company's ("ACIC") motion for summary judgment and denying Mathis' motion for summary judgment. Finding no merit to the appeal, we affirm.
 {¶ 3} In March 1998, Mathis was a passenger in a vehicle that was involved in an automobile accident with another vehicle. Both drivers were found negligent. Each driver carried a maximum of $25,000 liability insurance, which both insurers provided to Mathis. Thus, she received $50,000 from the tortfeasors' liability carriers.
 {¶ 4} Mathis was also insured under an automobile liability policy by ACIC which included underinsured motorist coverage ("UIM") with a limit of $50,000 per person. As a result of the accident, she incurred medical expenses which Medicare paid. Medicare subsequently asserted a lien in the amount of $11,657.23 against the settlement money received from the tortfeasors' insurance companies. Mathis reimbursed Medicare in the full amount and then asserted a claim against ACIC for $11,657.23 pursuant to her underinsured motorist provision.
 {¶ 5} ACIC declined her claim, reasoning that Mathis had already received $50,000 from the tortfeasors' insurance companies, which was the maximum amount of her own policy. ACIC claimed that setting off the $50,000 already received exhausted the $50,000 limit available under her UIM coverage. Therefore, she was not entitled to any funds under her own UIM coverage.
 {¶ 6} Mathis filed suit against ACIC for $11,657.23. She appeals the granting of ACIC's motion for summary judgment.
 {¶ 7} Appellate review of summary judgments is de novo.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389,696 N.E.2d 201, as follows:
"Pursuant to Civ.R. 56, summary judgment is appropriate when(1) there is no genuine issue of material fact, (2) the movingparty is entitled to judgment as a matter of law, and (3)reasonable minds can come to but one conclusion and thatconclusion is adverse to the nonmoving party, said party beingentitled to have the evidence construed most strongly in hisfavor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,1995 Ohio 286, 653 N.E.2d 1196, paragraph three of the syllabus.The party moving for summary judgment bears the burden of showingthat there is no genuine issue of material fact and that it isentitled to judgment as a matter of law. Dresher v. Burt(1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107,662 N.E.2d 264."
 {¶ 8} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 9} In the instant case, Mathis contends that the Medicare statutory subrogation lien reduces the amount of ACIC's setoff against the amount paid by the tortfeasors and thus allows her to recover the $11,657.23 from her own UIM coverage. ACIC contends that Mathis is not entitled to reduce the setoff because the lien resulted from her own medical expenses.
 {¶ 10} R.C. 3937.18 governs underinsured/uninsured motorist coverage. The version applicable to the instant case provides, in pertinent part:
"* * * Underinsured motorist coverage is not and shall not beexcess insurance to other applicable liability coverages, andshall be provided only to afford the insured an amount ofprotection not greater than that which would be available underthe insured's uninsured motorist coverage if the person orpersons liable were uninsured at the time of the accident. Thepolicy limits of the underinsured motorist coverage shall bereduced by those amounts available for payment under allapplicable bodily injury liability bonds and insurance policiescovering persons liable to the insured." R.C. 3937.18(A)(2).
 {¶ 11} The Ohio Supreme Court has held that, for purposes of setting off the tortfeasor's liability coverage against uninsured motorist coverage limits, R.C. 3937.18(A)(2) requires "a comparison of the amounts that are actually accessible to the claimant from the tortfeasor's automobile liability insurance carrier and the claimant's own underinsured motorist coverage limits." Clark v. Scarpelli, 91 Ohio St.3d 271, 276,2001-Ohio-39, 744 N.E.2d 719.
 {¶ 12} Both parties rely on Littrell v. Wigglesworth
(2001), 91 Ohio St.3d 425, 746 N.E.2d 1077, which involved three consolidated cases
 {¶ 13} with relatively similar issues. Of these cases, the Court's analysis of Karr v. Borchardt beginning on page 433 of the Littrell decision is relevant to the instant case. The issue presented in Karr was "whether the limits of a claimant's underinsured motorist coverage are compared to the limits of the tortfeasor's automobile liability coverage or whether they are compared to the amounts actually received by a claimant from the tortfeasor's liability policy." Id. at 429.
 {¶ 14} In Karr, Helen Beddow died as a result of injuries sustained in an automobile accident. The driver at fault was insured by Westfield Insurance Company ("Westfield") with policy limits of $100,000 per person and $300,000 per occurrence. Three of the decedent's five statutory beneficiaries filed a wrongful death and survival action against the driver. The complaint also alleged that the beneficiaries were entitled to recover underinsured motorist benefits from each of their respective automobile liability insurance policies.
 {¶ 15} Westfield subsequently paid $100,000 to the estate of Helen Beddow to satisfy the wrongful death and survival claims. Thus, each of the decedent's five statutory wrongful death beneficiaries was to receive $20,000. However, each beneficiary actually received less than $9,000, after deducting their pro rata share of expenses, attorney fees, and a statutory subrogation lien to Medicare. The beneficiaries contended that the "amount available for payment" was only $9,000, and not $20,000. Therefore, they claimed that $9,000 should be compared to the policy limits of their respective underinsured motorist policies. Their insurance companies disagreed, stating that setoff is determined by the "amount available for payment" ($20,000), not the net amount actually received.
 {¶ 16} The Ohio Supreme Court preliminarily held:
"* * * [e]xpenses and attorney fees are not part of thesetoff equation. Such fees are an expense of an insured andshould not act, in order to increase underinsured motoristbenefits, to reduce the `amounts available for payment' from thetortfeasor's automobile liability carrier. Conversely, astatutory subrogation lien to Medicare should be considered whendetermining the amounts available for payment from thetortfeasor. Such a lien is not an expense of an insured." Id. at434.
 {¶ 17} Therefore, each beneficiary was entitled to reduce the "amount available for payment" ($20,000) by their pro rata share of the Medicare lien because the lien was not an expense of each insured beneficiary.
 {¶ 18} The Seventh District Court of Appeals recently addressed a similar issue in Mid-American Fire Cas. Co. v.Broughton, 154 Ohio App.3d 728, 2003-Ohio-5305, wherein the court clarified the Littrell decision, stating:
"* * * an insured cannot recover expenses from her UM/UIMinsurer that she incurred that are related to her claims againstthe tortfeasor * * *
 In Littrell, the claimants were insured by distinctinsurance policies containing separate UM/UIM coverage. The courtstated that the attorney fees incurred by the insureds whenprosecuting their claims for UM/UIM coverage should not reducethe `amounts available for payment' from the tortfeasor'sliability carrier because these fees were expenses of theinsureds. * * * But it found that a statutory subrogation lien toMedicare should be considered when determining the amountsavailable for payment from the tortfeasor because that lien wasan expense of the estate, which was not an insured under thepolicies in question." Id. at 733.
 {¶ 19} In applying Littrell and Broughton to the instant case, Mathis is not entitled to reduce the amounts available for payment from the tortfeasors because the Medicare lien was an expense of the insured, Mathis. While she is correct in stating that the "party that received payment" is obligated to reimburse Medicare, citing 42 C.F.R. § 411.37(a), neither Littrell norBroughton indicated that this was the authority which allowed the reduction. The reduction was appropriate in Littrell
because the Medicare lien was an expense of the estate and not an expense of the insured beneficiaries. In the instant case, the Medicare lien was an expense of Mathis, the insured, and therefore she is not entitled to reduce the "amount available for payment" from the tortfeasors.
 {¶ 20} Accordingly, we find that the trial court properly granted ACIC's motion for summary judgment.
 {¶ 21} The sole assignment of error is overruled.
 {¶ 22} The judgment is affirmed.
Judgment affirmed.
 Calabrese, Jr., J. concurs.
 Gallagher, J. dissents. (see separate dissenting opinion.)