OPINION
{¶ 1} Appellants, James Sipusic ("Mr. Sipusic") and Brenda Kovach Sipusic, appeal from a judgment of the Trumbull County Court of Common Pleas granting summary judgment to the city of Girard ("Girard"). For the reasons set forth below, we affirm the trial court's judgment.
 {¶ 2} Appellants owned real property located at 1608 Oak Street in Girard, Ohio. Robert Racick ("Racick") owned real property located at 1639 Greenwood Avenue in Girard, Ohio, and Racick's property was adjacent to appellants' property. Both properties were located in a zoning district known as R-1 Single Family Residential District, in Girard. Article Seven, Section D, Subsection 2 of the applicable zoning ordinance prohibited any dwelling to be constructed within fifty feet of the rear of another's property line.
 {¶ 3} On or about October 10, 2000, a city zoning inspector for Girard issued a building permit to Racick, allowing him to construct a permanent structure less than ten feet from the rear of appellants' property line. Girard admits that this permit was contrary to the R-1 zoning ordinance and was issued without a variance.
 {¶ 4} The structure built by Racick included downspouts which caused water to unnaturally accumulate on appellants' property and interfered with appellants' use and enjoyment of their property. Appellants' property diminished in value as a result of the water accumulation.
 {¶ 5} Appellants at all times objected to the issuance of the permit, and they stated that Girard never held a public meeting to discuss the matter. According to appellants, they learned of the issuance of the permit in late October 2000, and Mr. Sipusic immediately went to the zoning office to complain about the situation. Although the ordinance is vague, and the record does not illuminate any specific procedures and/or time frames required to appeal the issuance of a permit to the Board of Zoning Appeals ("the Board"), it is apparent that appellants were aware of the permit at the time of its issuance and were able to timely appeal to the proper authority.
 {¶ 6} Appellants also contend that they were "rudely treated and maliciously chastised and insulted due to their protest of the disputed permit." They argue that on two occasions, Rex Funge ("Funge"), Girard's Assistant City Engineer/Zoning Inspector, maliciously chastised and insulted Mr. Sipusic regarding his objection to the permit. At one city council meeting, according to appellants, Funge berated and maliciously chastised Mr. Sipusic in front of numerous people and with the intent to harm appellants.
 {¶ 7} Appellants filed a complaint against Girard and Racick on May 7, 2001, praying for compensatory and punitive damages for violations of the Fourth and Fourteenth Amendments of the United States Constitution and Section 1983, Title 42, U.S. Code.[1] Appellants alleged that, as a result of these violations, they have suffered loss of use and value of their property and damages in excess of $100,000.
 {¶ 8} Girard and Racick timely answered, and Racick filed a cross-claim against Girard. Girard moved for summary judgment against appellants and against Racick, on January 7, 2002 and April 18, 2002, respectively. Appellants responded to Girard's motion, but Racick did not.
 {¶ 9} On September 25, 2002, the trial court granted summary judgment in favor of Girard and against appellants and Racick. The trial court stated that no genuine issues of material facts existed, and Girard was entitled to judgment as a matter of law.
 {¶ 10} On September 27, 2002, appellants voluntarily dismissed Racick.
 {¶ 11} Appellants subsequently appealed and put forth the following assignment of error:
 {¶ 12} "[1.] Whether the trial court erred and abused its discretion in granting [Girard's] motion for summary judgment since a genuine issue of material fact does exist precluding [Girard] from summary judgment."
 {¶ 13} Before addressing the merits of appellants' assignment of error, we will first lay out the appropriate standard of review. An appellate court reviews a trial court's decision on a motion for summary judgment de novo.[2] Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389; Leibreich v. A.J. Refrigeration, Inc.,67 Ohio St.3d 266, 268, 1993-Ohio-12; Bostic v. Connor (1988),37 Ohio St.3d 144, 146.
 {¶ 14} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176. citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 15} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the reciprocal burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 16} In appellants' sole assignment of error, they argue the trial court erred by granting summary judgment to Girard. Specifically, appellants argue that they are able to demonstrate intentional or purposeful discrimination and that they were selectively treated as compared to others similarly situated. We disagree.
 {¶ 17} The Girard zoning ordinance was enacted pursuant to R.C. 713.06 through 713.12. Article 10 of the ordinance established the Board. A board of zoning appeals only has authority to consider an appeal as to whether the grant of a zoning certificate was proper. Bognar v. Mantua Twp. Bd. ofZoning Appeals (June 25, 1999), 11th Dist. No. 98-P-0054, 1999 Ohio App. LEXIS 2948. The authority of the Board in the instant matter was specifically set forth in Article 11 of the ordinance. According to Article 11, the Board had the authority to "hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Zoning Inspector in the enforcement of this ordinance."
 {¶ 18} A party may appeal a board's decision to the court of common pleas. R.C. 2506.04; Bognar at 12. However, a party may not appeal to the court of common pleas a decision for which an appeal is granted by rule, ordinance, or statute to a higher administrative authority. R.C. 2506.01. Thus, a party must exhaust all administrative appeals before appealing a decision to a court of common pleas. See, e.g., Bognar at 15, (holding that the trial court lacked jurisdiction to hear the issues raised where the appellants did not properly challenge the grant of a building permit by a zoning inspector in front of a zoning board).
 {¶ 19} We also note that a plaintiff is not required to exhaust administrative remedies when challenging the constitutionality of a statute, ordinance, or administrative rule on its face. Jones v. Chagrin Falls, 77 Ohio St.3d 456,1997-Ohio-253. In that situation, a plaintiff may proceed directly to a court of common pleas. Id. However, in the instant matter, appellants challenge the constitutionality of the Girard zoning ordinance as applied. The Supreme Court of Ohio has held that, prior to initiating an action challenging the constitutionality of a zoning ordinance as applied, a party must first exhaust all administrative remedies. Johnson's Island,Inc. v. Bd. of Twp. Trustees of Danbury Twp. (1982),69 Ohio St.2d 241, 247.
 {¶ 20} It is apparent that pursuant to R.C. 2506.01, R.C.2506.04, and Johnson's Island, appellants were required to exhaust all administrative remedies before filing their complaint with the trial court. Further, the record is clear, and the parties do not dispute, that appellants did not appeal to the Board the zoning inspector's issuance of a permit to Racick. In their reply to Girard's motion for summary judgment, appellants failed to indicate in any way that they were unable to meet the time frame required to appeal the issuance of the permit to the Board. Accordingly, we conclude that appellants failed to properly appeal the issuance of the permit, and the matter was not properly before the trial court.
 {¶ 21} Despite this, failure to exhaust administrative remedies is an affirmative defense which must be timely asserted in an action or it is waived. See, e.g., Civ.R. 8(c); Civ.R. 12(h); Jones at 462. Nowhere in Girard's answer or motion for summary judgment does Girard put forth this affirmative defense. Girard thus waived this defense and, in doing so, consented to the trial court's jurisdiction in the matter.
 {¶ 22} We now address the merits of appellants' sole assignment of error.
 {¶ 23} Section 1983, Title 42, U.S. Code provides, in pertinent part:
 {¶ 24} "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at an action at law * * *."
 {¶ 25} A city is deemed a "person" with respect to Section 1983 and can be subject to liability based on violations of Section 1983. Monell v. Dept. of Social Serv. of New York
(1978), 436 US. 658, 690. This liability, however, is limited.
 {¶ 26} According to Monell, municipalities may not be held liable under the doctrine of respondeat superior. Id. at 691. "[A] local government may not be sued under [Section 1983] for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy * * * whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section 1983]."Monell at 694. In addition, municipalities "may be sued for constitutional deprivations visited pursuant to governmental `custom' even though such custom has not received formal approval through the government's official decisionmaking channels." Id. at 690-691.
 {¶ 27} In Pembaur v. Cincinnati, (1996), 475 U.S. 469, paragraph one of the syllabus, the Supreme Court of the United States summarized Monell, stating that "* * * recovery from a municipality is limited to acts that are, properly speaking, `of the municipality,' i.e., acts that the municipality has officially sanctioned or ordered." In Pembaur, the court held that "* * * it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. If the decision to adopt a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken separately." Id. at paragraph one of the syllabus.
 {¶ 28} When determining whether a municipality is immune from liability for actions of its employees, "[a] court's task is to `identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" McMillan v.Monroe Cty., Ala. (1997), 520 U.S. 781, 784-785, quoting Jettv. Dallas Indep. School Dist. (1989), 491 U.S. 701, 737
 {¶ 29} In the instant matter, it is clear that the issuance of the permit was contrary to the zoning ordinance and was not taken pursuant to an official policy of Girard. Further, according to Article 11, Section 3 of the zoning ordinance, only the Board was authorized to issue variances, and variances could be granted only after a written application was submitted to the Board. Accordingly, the zoning inspector was not an employee of Girard with final authority to set policy in zoning matters.
 {¶ 30} In conclusion, it is apparent that the permit was issued contrary to the zoning ordinance and not issued pursuant to official Girard policy. Likewise, the zoning inspector did not have final authority to set policy in zoning matters. No genuine issue of material fact existed, and Girard was immune from liability in this matter and entitled to judgment as a matter of law.
 {¶ 31} Even if Girard was not immune from the liability alleged in this matter, appellants' claim still fails. The Supreme Court of the United States held in Snowden v. Hughes
(1944), 321 U.S. 1, 8, that "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposefuldiscrimination." (Emphasis added). The burden of demonstrating purpose or intent lies with the plaintiff. Id.
 {¶ 32} Appellants argue that they are able to prove intentional and purposeful discrimination. In attempting to do so, they allege that they were "chastised and treated rudely when attempting to voice their concerns regarding the issuance of the permit to Racick * * *." Specifically, appellants allege that Funge became belligerent when Mr. Sipusic approached him about this matter. Appellants also argue that Funge "accused Mr. Sipusic of forging documents and requested that Mr. Sipusic be ignored" at a city council meeting. If we accept these facts as true, appellants still fail to prove intentional and purposeful discrimination.
 {¶ 33} The alleged treatment Mr. Sipusic received from Funge occurred only after the permit was issued to Racick. These facts in no way establish that Girard intentionally and purposefully discriminated against appellants when the city issued the permit to Racick. We therefore conclude that the ordinance was not unconstitutional as applied.
 {¶ 34} In summary, there existed no genuine issue of material fact. Although appellants were required by R.C. 2506.01, R.C.2506.04, and Johnson's Island to exhaust all administrative remedies before filing their complaint with the trial court, Girard failed to raise this as an affirmative defense and effectively consented to jurisdiction in this matter. Our review of the merits of appellants' assignment of error reveals that Girard was immune from liability in this matter. Even if the city were not immune, appellants' cause of action fails because they are unable to prove that any alleged discrimination was intentional and purposeful, and the ordinance was thus not unconstitutional as applied.
 {¶ 35} Appellants' sole assignment of error is without merit, and Girard was entitled to judgment as a matter of law. We hereby affirm the judgment of the trial court.
Ford, P.J., Rice, J., concur.
[1] Appellants' complaint and their appellate brief, indeed, states that they based their action upon alleged violations of the Fourth and Fourteenth Amendments. Appellants likely intended to state a violation of the Fifth Amendment, rather than theFourth Amendment. The Fifth Amendment guarantees that private property will not be taken for public use without just compensation, while the Fourth Amendment applies to the criminal context and prohibits unreasonable searches and seizures. While appellants likely intended to allege a violation of theFifth Amendment, nowhere in the record is any argument that Girard's actions constituted a taking. Further, "[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." State ex rel. Shemo v. Mayfield Heights
(2002), 95 Ohio St.3d 59, 63, 2002-Ohio-1627, reconsideration granted in part on other grounds, 96 Ohio St.3d 379,2002-Ohio-4905, certiorari denied (2003), 538 U.S. 906, citingState ex rel. Elsass v. Shelby Cty. Bd. of Commrs.,92 Ohio St.3d 529, 533, 2001-Ohio-1276.
[2] In their appellate brief, appellants argue the incorrect standard of review. Although appellants put forth the correct legal standard for summary judgment, the heading preceding the body of appellants' argument indicates that they argue that abuse of discretion is the appropriate standard of review in this matter. This is incorrect, as an appellate court reviews a trial court's decision on a motion for summary judgment de novo.